# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

STEPHEN J. WILLIAMS,
*Plaintiff*,

v.

No. 3:24-cv-200 (JAM)

TRANS UNION LLC,
*Defendant*.[1]

## ORDER GRANTING MOTION TO DISMISS

This lawsuit concerns the information contained in a plaintiff's credit report. The plaintiff alleges that the defendant produced a credit report containing information that should not have been included according to the requirements of the Fair Credit Reporting Act and the Higher Education Act. The defendant now moves to dismiss, arguing that the report complied with the terms of both federal laws even on the basis of the facts alleged in the complaint. I agree, and so I will grant the defendant's motion to dismiss the complaint with prejudice.

## BACKGROUND

In October 2023, plaintiff Stephen J. Williams noticed that his credit score—as calculated by the defendant Trans Union LLC, a consumer credit reporting agency— had dropped by approximately 75 points.[2] The basis for this decline, Williams believed, was Trans Union's inclusion in his credit report of an account with a balance of $124,998 owed to the Department of Education.[3] That account was the result of a consolidation in August 2023 of a number of Williams's pending federal student loans.[4] These loans had been in default for "decades."[5]

---

[1] Defendant's Federal Rules of Civil Procedure 7.1 corporate disclosure statement refers to itself as "Trans Union LLC." Doc. #31 at 1. The Clerk of the Court is respectfully requested to update the caption in this case accordingly.
[2] Doc. #1 at 3 (¶ 11). These facts and those that follow are drawn from Williams's complaint and are assumed to be true solely for the purpose of this motion to dismiss.
[3] *Id.* at 3 (¶¶ 11, 13).
[4] *Id.* at 3 (¶¶ 9-10).
[5] *Id.* at 3 (¶ 9).

Williams wrote Trans Union to explain his belief that this account should not have been included on his credit report because it was "an old account which 'aged out' from my credit report many years ago."[6] Trans Union replied that it had conducted an investigation and that the "disputed item[] was verified as accurate."[7] Williams replied to request that Trans Union remove the account from his credit report.[8] Trans Union responded by repeating that "[t]he disputed item[] was verified as accurate."[9]

Williams then filed this suit, alleging violations of the Fair Credit Reporting Act and the Higher Education Act, as well as seeking relief under the Declaratory Judgment Act.[10] Trans Union now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[11]

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). The "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.[12] The Court need

---

[6] *Id.* at 3 (¶ 13).
[7] *Id.* at 3 (¶ 14).
[8] *Id.* at 4 (¶ 15).
[9] *Id.* at 4 (¶ 16).
[10] *Id.* at 4-5 (¶¶ 18-23).
[11] Doc. #38 at 1.
[12] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

not accept allegations that couch legal conclusions in the form of factual allegations or that are otherwise conclusory. *See Hernandez*, 939 F.3d at 198.

If a plaintiff is appearing *pro se*, the Court must afford the complaint a a liberal construction and interpret it to raise the strongest grounds for relief that its allegations suggest. *See Meadows v. United Servs.*, Inc., 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid.*

### *Fair Credit Reporting Act (FCRA)*

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Importantly, the FCRA "creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995).

Williams first alleges that Trans Union violated two provisions of the FCRA—15 U.S.C. §§ 1681c(a)(4) and (a)(5)— by including the consolidated loan on his credit report.[13] Both sections are contained within Section 1681c(a), which forbids consumer credit reporting agencies from including certain pieces of information in credit reports that they produce. Section 1681c(a)(4) proscribes the inclusion of "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years." Section 1681c(a)(5) similarly forbids the inclusion of "[a]ny other adverse item of information . . . which antedates the report by more than seven years."

---

[13] Doc. #1 at 1 (¶ 1), 5 (¶¶ 19, 21).

In order to make out a claim that Trans Union violated Section 1681c(a)(4), Williams must plausibly allege (1) that Trans Union included "accounts placed for collection or charged to profit and loss" and (2) that these accounts "antedate the report by more than seven years." Williams does neither.

First, a natural reading of the complaint reveals that the disputed account was created in August of 2023 as part of Williams's efforts to consolidate his loans and, therefore is less than seven years old.[14]  The Higher Education Act affords the Department of Education limited powers to loan funds. Consolidation loans are among the enumerated types of loans that it allows the Department of Education to issue. *See* 20 U.S.C. § 1078–3. Williams's complaint alleges that he received just such a consolidated loan from the Department of Education.[15] "Such a [consolidation] loan pays off the outstanding balances on a borrower's existing loans and consolidates them into a single loan with a fixed interest rate." *Schwartz v. Goal Fin. LLC*, 485 F. Supp. 2d 170, 174 (E.D.N.Y. 2007) (citing § 1078-3). The act of consolidation involves taking out a *new* loan that is used to pay off the older loans. And this new loan is well within the seven-year window of Section 1681c(a)(4).

In the context of a former provision of the Bankruptcy Code, courts have examined a similar statutory provision setting out the then-governing terms for discharge of student loans in bankruptcy and "have roundly agreed that the act of consolidating student loans *creates a new loan which pays off the original loans* and begins [that statute's] seven year clock anew." *In re Burns*, 334 B.R. 521, 523 (Bankr. D. Mass. 2005) (collecting cases); *see also In re Schultz*, 615 B.R. 834, 843 (Bankr. D. Minn. 2020) (citing cases recognizing that consolidation of prior student loans creates a new loan).

---

[14] Doc. #1 at 3 (¶¶ 9-10).
[15] Doc. #1 at 3 (¶ 10).

Moreover, even if the consolidated loan were more than 7 years old, Williams does not allege that any of his loans were either "placed for collection" or "charged to profit and loss" as required by Section 1681c(a)(4). That provision does not, by its own terms, apply to a loan that is merely delinquent. This is confirmed by the text of Section 1681c(c)(1), which sets out that the 7-year period "referred to in [subsection c(a)(4)]" begins "with respect to any delinquent account that is placed for collection[], charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity. . . ."

The drafters of the statute were thus keenly aware of the relationship—and differences—between delinquency and collection. Instead of choosing to cover all delinquent loans or accounts under Section 1681c(a)(4), Congress explicitly limited this provision only to those delinquent loans or accounts that had faced a further action, like collection. *Cf. Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("when Congress includes particular language in one section of a statute but omits it in another . . . this Court presumes that Congress intended a difference in meaning.").

Williams does not allege that the disputed account is more than seven years old, and Williams does not allege that the disputed account has been sent to collection or charged to profit and loss (nor, even, does Williams so allege as to the loans paid off by the disputed consolidation loan). Therefore, for both reasons, he has failed to plausibly allege a violation of Section 1681c(a)(4).

Nor does he plausibly allege a violation of Section 1681c(a)(5), which is a catch-all provision forbidding the inclusion of "[a]ny other adverse item of information . . . which antedates the report by more than seven years" on a consumer credit report. This claim fails

because, as I have just explained, the consolidated loan is less than seven years old, and so it it neither an account or "information" that "antedates the report by more than seven years."

But even were the loan older than seven years, this claim would fail. Section 1681c(a)(5) is adjacent to Section 1681c(a)(4) in the statute. Section 1681c(a)(4) speaks directly to when an "account" such as a loan ages out of reporting on a consumer credit report. To conclude that such accounts are also an "other adverse item of information" covered by Section 1681c(a)(5) would prohibit reports from containing *any* loan more than seven years older than the report, which in turn would render ineffective the limitations of Section 1681c(a)(4) to the reporting of only certain types of accounts as discussed above. Section 1681c(a)(4) would be left without operation, as *all* loan accounts more than seven years old—whether "placed for collection or charged to profit and loss" or not—would be prohibited from inclusion in any credit report as "other adverse item[s] of information." Such a reading flies in the face of the canon against superfluities, which commands that "[i]t is our duty to give effect, if possible, to every clause and word of a statute." *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 21 (2006).

This is further confirmed by the words of the statute: Section 1681c(a)(5) refers to "[a]ny *other* adverse item of information," separating itself—by its very terms—from Sections (a)(1) through (a)(4). "[I]f § 1681c(a)(5) were independent of the preceding subsections, it would have just said 'any adverse item.'" *Grijalva v. ADP Screening & Selection Servs. Inc.*, 2024 WL 728709, at *6 (D. Ariz. 2024). Accordingly, Williams's claim fails both because the challenged loan is less than seven years old and because Section 1681c(a)(5) does not support an action brought to challenge an outstanding loan account not barred from reporting under Section 1681c(a)(4).

Williams further alleges that Trans Union "refused to properly investigate" the dispute.[16] I broadly construe this to allege a violation of the FCRA's command that consumer credit reporting agencies "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" when "the completeness or accuracy of any item of information contained in a consumer's file . . .  is disputed by the consumer." 15 U.S.C. § 1681i(a)(1)(A).

But as a threshold matter, a plaintiff "must demonstrate that [their] credit report contained inaccurate information in order to prevail on a claim under . . . § 1681i." *Cohen v. Equifax Info. Servs., LLC*, 827 F. App'x 14, 16 (2d Cir. 2020); *see also Boyer v. TransUnion, LLC*, 2023 WL 1434005, at *3 (D. Conn. 2023). Williams fails to do so. He does not challenge the accuracy of the information in the report describing the consolidation loan, and as I have already explained, he fails to raise a legally valid challenge to the very inclusion of that loan on the report. Accordingly, Williams has not stated a plausible Section 1681i claim.

### *Higher Education Act (HEA)*

 Williams next seeks relief under the Higher Education Act. Specifically, Williams cites 20 U.S.C. § 1080a(f)(2), which forbids consumer reporting agencies from including in a credit report information received from the Department of Education that is 7 years or more from the date that the account was first reported to the consumer reporting agency.

This claim would fail on its merits for the same reasons as Williams's FCRA claims fail, because the account in question is less than 7 years old. But the claim also fails because the HEA does not afford borrowers a private right of action. *See Sanon v. Dep't of Educ.*, 453 F. App'x 28, 30 (2d Cir. 2011); *Pottetti v. Educ. Credit Mgmt. Corp.*, 2020 WL 5645194, at *4 (E.D.N.Y. 2020). Accordingly, Williams has not alleged plausible grounds for relief under the HEA.

---

[16] Doc. #1 at 5 (¶ 19).

### *Declaratory Judgment Act*

Williams also seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. It is hornbook law that "the Declaratory Judgment Act does not provide an independent federal cause of action but is merely procedural in nature and offers an additional remedy to litigants who have alleged proper causes of action over which a federal court has jurisdiction." *Harris v. Clough*, 2024 WL 3964945, at *1 (D. Conn. 2024) (citing *Gregoire v. Citizens Bank*, 2021 WL 4127076, at *2 n.1 (2d Cir. 2021)). Williams cannot rely on the Declaratory Judgment Act to hold Trans Union liable for conduct that does not otherwise violate the law. Accordingly, I will dismiss Williams's claim under the Declaratory Judgment Act.

### *Dismissal with prejudice*

The next question is whether the complaint should be dismissed with or without prejudice. I will dismiss the complaint with prejudice on the ground that Williams has not sought leave to amend and on the ground that it does not appear that there is any manner in which he could amend the complaint that would overcome the concerns stated in this ruling. *See Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1114-15 (2d Cir. 2024).

### *Motion to strike*

Williams has not filed any opposition that responds to the merits of Trans Union's arguments for dismissal. Instead, Williams has filed a motion to strike Trans Union's motion in order to protest Trans Union's critique of Williams's motives for filing this action.[17] Because I will grant Trans Union's motion to dismiss, I need not consider or resolve the motion to strike and will deny it as moot.

---

[17] Doc. #42.

*Fees and costs*

Lastly, Trans Union seeks an award of its fees and costs to defend against this lawsuit. The FCRA allows a court to award fees to the prevailing party "[o]n a finding by the that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment." 15 U.S.C. §§ 1681n(c), 1681o(b).

Trans Union has done little to show bad faith except by reference to prior attorney disciplinary proceedings against Williams more than ten years ago. *See In re Williams*, 978 F. Supp. 2d 123 (D. Conn. 2012). Nor am I convinced in light of the somewhat complicated statutory framework at issue here that the entire basis for Williams's claim was objectively frivolous and beyond any reasonable debate. Therefore, for lack of an adequate threshold showing by Trans Union of frivolity or a plainly improper motive for filing this lawsuit, I will deny Trans Union's request for an award of fees and costs.

## CONCLUSION

For the reasons discussed above, the Court GRANTS with prejudice Trans Union's motion to dismiss (Doc. #38) but without an award of fees or costs. The Court DENIES as moot Williams's motion to strike (Doc. #42). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 27th day of November 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

9